**KENTUCKY ASSOCIATION OF FIRE CHIEFS, INC; Jefferson County Fire Inspectors Association; Jeffersontown Fire Protection District; and Jack V. Reckner, Appellants,**

v.

**KENTUCKY BOARD OF HOUSING, BUILDINGS AND CONSTRUCTION; Kentucky Office of Housing, Buildings and Construction; and Home-builders Association of Kentucky, Inc., Appellees.**

Nos. 2009–CA–001476–MR, 2009–CA–001945–MR.

Court of Appeals of Kentucky.

Dec. 10, 2010.

As Modified Jan. 14, 2011.

Discretionary Review Denied by Supreme Court Aug. 17, 2011.

Maurice A. Byrne, Jr. (argued), Louisville, KY, for appellant.

Dawn M. Bellis, M. Holliday (Hollie) Hopkins (argued), Frankfort, KY, for appellee Department of Housing, Buildings and Construction; and Kentucky Office of Housing, Buildings and Construction.

Thomas M. Todd (argued), Lexington, KY, for appellee Homebuilders Association of Kentucky, Inc.

Before CLAYTON, DIXON, and WINE, Judges.

*OPINION*

WINE, Judge:

The Appellants, consisting of several non-profit associations of fire chiefs throughout Kentucky (hereinafter referred to collectively as "the Fire Chiefs"), appeal from two orders of the Franklin Circuit Court. The Fire Chiefs sought a declaratory judgment against the Kentucky Board of Housing, Buildings and Construction ("the Board") and the Kentucky Office of Housing, Buildings and Construction, which is now the Kentucky Department of Housing Buildings and Construction ("the Department"). The Fire Chiefs argued that the Board and the Department exceeded their statutory authority by interpreting the state Building and Residential Codes as a "maxi code," which prohibits local governments from enacting construction standards exceeding those required by the state codes. The Fire Chiefs specifically challenged the Board's attempt to enjoin enforcement of an ordinance adopted by the City of Indian Hills, and they further argued that the Board's interpretation would affect the enforceability of ordinances adopted by fifteen other local governments.

The trial court concluded that the state codes preempt local regulation of construction standards and that the Board properly enjoined enforcement of the Indian Hills Ordinance. In a separate order, the trial court dismissed the declaratory claims involving the fifteen other ordinances, concluding that they were not ripe for review. On the first issue, we agree with the trial court that the Board acted within its authority by adopting an interpretation of the Building and Residential Codes which would preclude enforcement of the Indian Hills Ordinance. On the second issue, we agree that the trial court properly dismissed the remaining claims as not ripe for review. Hence, we affirm in both appeals.

The factual and procedural history of this action is not in dispute. On October 18, 2007, the City of Indian Hills, a fifth-class city in Jefferson County, enacted Ordinance No. 15.06.010 ("the Indian Hills Ordinance"). Under the Indian Hills Ordinance, any new building construction having a roof supported by columns or walls and intended for shelter, housing use, or enclosure of persons, is required to be equipped with an approved automatic sprinkler system. The Indian Hills Ordinance defines the "sprinkler system" as a "system installed in accordance with the National Fire Protection Association (NFPA) Standards." Under the Indian Hills Ordinance, the fire marshals of the St. Matthews Fire Department, the fire marshals of Harrods Creek Fire Department, or their designees, or the Code Enforcement Officer of the City of Indian Hills were authorized to conduct inspections to ensure the installation of the sprinkler system. The Indian Hills Ordinance also provides that any person who

fails to equip new construction with such a system will be assessed a fine not in excess of $100 for each offense, further providing that each day a violation persists after notice will constitute a separate offense.

After receiving a complaint in October of 2007, the Department's Division Director, Terry Slade, informed the Board about the Indian Hills Ordinance. Believing the ordinance to be in conflict with the Kentucky Residential Code, embodied in 815 Kentucky Administrative Regulation ("KAR") 7:125 ("the Residential Code"), the Department sent a letter to the City of Indian Hills stating that its ordinance was in conflict with the Residential Code and should not be enforced (the "do not enforce letter").

In the meantime, the Board and the Department had a meeting, at which they discussed the uniform state building codes promulgated under Kentucky Revised Statute ("KRS") 198B.050, consisting of the Kentucky Building Code, embodied in 815 KAR 7:120 ("the Building Code"), and the Residential Code, in light of the proposed amendments filed on May 14, 2008, to the Legislative Research Commission ("LRC"). Beginning in 1997, the Building Code included a prefatory statement explaining the Board's position that the Code establishes minimum and maximum building code requirements for detached single family dwellings, two-family ("the Mini/ Maxi Code Statement"). Similar language appeared in the 2002 versions of both the Building Code and the Residential Code. However, this language was not included in the 2007 version of the Codes. Consequently, the Board and the Department began the process of amending the Build-

ing and Residential Codes to re-adopt the Mini/Maxi Code Statements.

On August 12, 2008, the LRC's Administrative Regulation Review Subcommittee ("LRC–ARRS") held its own meeting to discuss the proposed amendments to the uniform state building codes. At that meeting, several fire service and fire marshal representatives opposed the proposed amendments. The challenged, proposed amendments were as follows:

(1) The inclusion of a prefatory statement in the Residential Code that provided as follows:

"The Kentucky Residential Code is a "mini-maxi" code in that it establishes minimum and maximum building code requirements for detached single family dwellings, two-family."

(2) The Purpose Clause in the Residential Code, i.e., Chapter 1, Section R101.3, reads as follows:

"**101.3 Purpose.** The Purpose of this code is to establish minimum and maximum requirements to safeguard the public safety, health and general welfare through affordability, structural strength, means of egress facilities, stability, sanitation, light and ventilation, energy conservation and safety to life and property from fire and other hazards attributed to life and property from fire and other hazards attributed to the built environment. No local government shall adopt or enforce any other building code for detached single family dwellings, two family dwellings and townhouses."

The Building Code was proposed to contain similar prefatory or introductory statements.[1] The proposed amendments

---

1. The prefatory or introductory statement of the Building Code reads, "... The Kentucky Building code is a 'mini/maxi' code, meaning that it is a statewide uniform mandatory

building code and no local government shall adopt or enforce any other building code; except that the Kentucky Residential Code

to Section 101.3 of the Residential Code took effect on September 24, 2008. However, the proposed changes to Section 101.3 of the Building Code had not taken effect at the time this matter was pending before the trial court.[2]

On September 2, 2008, the Fire Chiefs filed a verified complaint for declaratory action. They primarily challenged the validity of adopting the Mini/Maxi Code Statement as a preface to the Residential Code, including the amendment of Section 101.3 of the Residential Code, which reiterates what is expressed in the Mini/Maxi Code Statement. The Fire Chiefs also challenged the Board's directive that the City of Indian Hills cease all efforts to enforce the Indian Hills Ordinance. In addition, the Fire Chiefs asserted that the Board's position would affect the enforcement of fire safety ordinances in fifteen other cities throughout Kentucky.[3] The Fire Chiefs alleged that the Board exceeded its statutory authority by adopting the Mini/Maxi Code language in the current version of the Residential Code. Consequently, the Fire Chiefs sought to enjoin the Board and the Department from "interfering with the functions of fire chiefs, fire marshals and other fire services across the state in enforcing local ordinances involving fire safety."

Soon after the complaint was filed, the Home Builders' Association of Kentucky, Inc. ("the Intervener") filed a motion to intervene in the case. The trial court granted the motion on October 10, 2006, allowing intervention. On November 21, 2008, the Fire Chiefs filed a motion for summary judgment, asserting that there were no genuine issues of material fact in this case and that they were entitled to declaratory judgment as a matter of law. On January 16, 2009, the Board and the Department filed a cross-motion for summary judgment, also seeking judgment as a matter of law. These motions dealt primarily with the issues related to the Indian Hills Ordinance. In a separate motion filed on January 26, 2009, the Fire Chiefs moved for partial summary judgment on the claims relating to the fifteen other ordinances raised in their declaratory judgment action. Since the Board, the Department, and the Interveners did not challenge the validity of those ordinances, the Fire Chiefs argued that trial court should grant its motion for partial summary judgment relating to these ordinances.

shall govern detached single family dwellings, two family dwellings and townhouses."

2. The Purpose Clause in the Building Code, with the proposed changes if and when adopted, will read as follows:

101.3 Purpose. The purpose of this code is to establish the minimum *and maximum* requirements to safeguard the public health, safety and general welfare through structural strength, means of egress facilities, stability, sanitation, adequate light and ventilation, energy conservation, and safety to life and property from fire and other hazards attributed to the built environment. *No local government shall adopt or enforce any other building code for detached single family dwellings, two-family dwellings and*

*townhouses."* (Italics and emphasis supplied to highlight proposed changes.)

3. In addition to the Indian Hills Ordinance, the Plaintiffs below sought Declaratory judgment concerning the enforceability of fire-safety ordinances adopted in: Louisville Metro Government; Jefferson County; Danville, Boyle County; Erlanger, Kenton County; Florence, Boone County; Fort Mitchell, Kenton County; Fort Wright, Kenton County; Highland Heights, Campbell County; Lexington–Fayette Urban–County Government, Fayette County; Ludlow, Kenton County; Minor Lane Heights, Jefferson County; Munfordville, Hart County; Nicholasville, Jessamine County; Stanford, Lincoln County; Sturgis, Union County; and Woodlawn, Campbell County.

On January 16, 2009, the Board and the Department filed a cross-motion for summary judgment arguing, among other things, that municipalities have no legal authority to mandate building code requirements more stringent than those required under statewide, uniform, and comprehensive building codes. The Board and the Department further argued that the Fire Chiefs lacked standing to bring this action. The Intervener also filed a cross-motion for summary judgment challenging the enforceability of the Indian Hills Ordinance.

After further briefing and oral arguments, the trial court entered an opinion and order on July 14, 2009. As an initial matter, the trial court found that the Fire Chiefs have a clearly recognizable interest in the dispute or controversy as it relates to the Indian Hills Ordinance. However, the court also found that the Board, the Department, and the Interveners were entitled to judgment as a matter of law. The trial court determined that the Board and the Department have the authority to establish minimum and maximum building code standards across the Commonwealth. Consequently, the court found that the City of Indian Hills does not have the authority to establish fire-safety standards which are more stringent than those contained in the State Building and Residential Codes.

Thereafter, the Fire Chiefs filed a timely notice of appeal from this order. In a separate order entered on September 18, 2009, the trial court entered an order dismissing the declaratory claims as they related to the fifteen other ordinances. The trial court found there was no actual controversy because the Board and the Department had not challenged the enforcement of any provisions of those ordinances. The Fire Chiefs filed a separate notice of

appeal from this order. Subsequently, this Court ordered the appeals consolidated.

■■■ As an initial matter, we question whether all necessary parties were before the trial court in this action. During the proceedings before the trial court, the parties focused on whether the Fire Chiefs had standing to seek relief as a party to this action. As the trial court noted, associational or representational standing allows associations generally to assert claims of its members on their behalf as long as its members have a clearly recognizable interest in the dispute or controversy. *See, City of Ashland v. Ashland F.O.P. No. 3, Inc.,* 888 S.W.2d 667 (Ky.1994). The trial court further found that the Fire Chiefs demonstrated a sufficient interest to seek a determination of its obligation to enforce local building requirements relating to fire safety. No party has sought review from this aspect of the trial court's order.

■■ However, this is a distinct issue from whether the City of Indian Hills or the other local governments are indispensable parties to this action. "An indispensible party is one whose absence prevents the Court from granting complete relief among those already parties." *Milligan v. Schenley Distillers, Inc.,* 584 S.W.2d 751, 753 (Ky.App.1979) (*superseded by statute on other grounds* ). Likewise, the Court in *West v. Goldstein,* 830 S.W.2d 379 (Ky. 1992), characterized a necessary party as one whose interest would be divested by an adverse judgment. *See also,* Kentucky Rules of Civil Procedure ("CR") 19.01 and 19.02.

In its judgment, the trial court found that the Indian Hills Ordinance is void because it prescribes standards that are more stringent than those found in the State Building and Residential Codes. The trial court further stated that, "the City of Indian Hills, by purporting to regu-

late any building intended for enclosure of persons, overstepped its enforcement authority under KRS 198B.060 (sic). Thus, its action is null and void." The trial court's wording raises a question of whether the City of Indian Hills would be an indispensible party to any determination concerning the validity of any ordinance it had enacted. Similarly, this raises a question of whether the other local governments would be necessary parties for any determination concerning the validity of their own legislation.

Although the issue of whether the local government was an indispensible party was not properly preserved for review, we will address it. This Court has previously addressed this issue under very similar circumstances, finding that the local government was not an indispensible party even though the trial court's judgment implicated the validity of an ordinance. In *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378 (Ky.App. 2004), the state Alcoholic Beverage Control ("ABC") Board suspended a store's liquor license for selling package liquor on a Sunday. The store filed an action for declaratory relief, relying on a local ordinance which permitted such sales. The circuit court found that the local ordinance conflicted with the statute and was therefore void. On appeal, the store argued for the first time that the local government was a necessary party to any determination concerning the validity of its ordinance.

This Court rejected that argument, concluding that the circuit court's ruling that the ordinance was void was "merely ancillary" to the ABC Board's finding that the store had violated the statute by selling liquor on a Sunday. The local government was not prejudiced in any way because the ultimate judgment concerned only the store's actions. *Id.* at 387.

Similarly, the only matters at issue in this case concern the authority of the Board to adopt regulations that supersede local ordinances and the Fire Chiefs' obligation to enforce local ordinances which conflict with the state codes. Since the trial court's judgment related only to the rights and duties of the parties before it, the other local governments were not indispensible parties to this action.

■ Based on this reasoning, we must also conclude that the trial court properly dismissed the claims relating to the fifteen other ordinances as not ripe for adjudication at this time. The Board has only exercised its authority to preempt enforcement of the sprinkler provisions of the Indian Hills Ordinance. Thus, the only active controversy concerns the duty of the Fire Chiefs to enforce that provision. Any question concerning the validity of any other local ordinance is not before the Court because the Board has not challenged enforcement of those ordinances and because the affected local governments are not parties to this action. Therefore, these claims are not ripe for adjudication at this time in this action.

■ Thus, the only remaining question in this case concerns the Board's authority to adopt an interpretation of the Building and Residential Codes which preempt local fire safety ordinances relating to construction. Kentucky has long recognized that local ordinances relating to fire safety are within the general police powers of municipalities. *See, City of Monticello v. Bates*, 163 Ky. 38, 173 S.W. 159, 161 (1915). However, KRS 82.082(1) specifies that a city may only exercise such powers when it is in furtherance of a public purpose and "not in conflict with a constitutional provision or statute". KRS 82.082(2) further provides that "[a] power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a com-

prehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes including, but not limited to, the provisions of KRS Chapters 95 and 96."

The mere presence of the state in a particular area of the law or regulation will not automatically eliminate local authority to enact appropriate regulations. *Lexington Fayette County Food and Beverage Ass'n v. Lexington–Fayette Urban County Government*, 131 S.W.3d 745, 750 (Ky.2004). The true test of the concurrent authority of state and local governments to regulate a particular area is the absence of conflict. *Id.* In determining whether there is a conflict between state and local regulations, the courts must consider whether:

(1) The subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.

*Commonwealth v. Do, Inc.,* 674 S.W.2d 519, 521 (Ky.1984).

In addressing these questions, we must first look to language of the statutes which created the Board and directed that it adopt a Building Code. The General Assembly established the Board in 1978 pursuant to KRS 198B.020 and vested it with the power "[t]o adopt and promulgate a mandatory uniform state building code, and parts thereof, which shall establish standards for the construction of all build-

ings. . . ." KRS 198B.040(7). Furthermore, KRS 198B.050 specifically authorizes the Board to adopt and promulgate a "mandatory Uniform State Building Code" with the following characteristics: (1) it shall be comprehensive; (2) it shall provide uniform standards and requirements for construction and construction materials; (3) it shall include but not be limited to provisions for general construction; structural quality; mechanical systems to include heating, cooling, and ventilation; electrical systems; and life safety from hazards of fire, explosion, and other disasters, whether caused by acts of nature or man; and (4) it must be designed after and may be selected from models offered by model code agencies.

The Fire Chiefs maintain that the requirements that the Building Code be mandatory, uniform, and comprehensive do not preclude local governments from adopting additional standards beyond the minimum requirements of the Building Code. Furthermore, in 1998, the legislature deleted language from KRS 198B.060(1) which specifically provided that local governments were required to enforce the Uniform State Building Code "and shall neither adopt nor enforce any other ordinance regulating buildings which conflicts with the Uniform State Building Code." At the same time, the legislature added language to KRS 198B.060(4), which prohibits the commissioner of housing, buildings and construction from preempting or asserting jurisdiction for the enforcement of the Building Code on single-family dwellings. Given these provisions, the Fire Chiefs argue that local governments retain some authority to prescribe higher building standards which cannot be preempted.

However, KRS 198B.060 specifically addresses local enforcement of the Building Code. As the trial court noted, this au-

thority is distinguishable from the authority to promulgate building or construction standards. In addition, KRS 227.300 authorizes the Department Commissioner to promulgate fire safety standards. That section specifies that "no part of the standards of safety shall establish, in whole or part, any building code other than the Uniform State Building Code, but the commissioner may supplement the Uniform State Building Code with fire safety regulations designed to operate in conjunction with the code." This section would seem to authorize only the Department to adopt supplemental regulations beyond the requirements set out in the State Building Code. The delegation of such power to the administrative agency impliedly conflicts with any exercise of such power by a local government.

■ Given the statutory scheme, it is not entirely clear that the General Assembly required the Board to adopt a Mini/Maxi interpretation of the Building Code. Even if this were the case, courts generally grant deference to any permissible construction of that statute by the administrative agency charged with its implementation. *See, Board of Trustees of Judicial Form Retirement System v. Attorney General of Commonwealth,* 132 S.W.3d 770, 786–87 (Ky.2003), *citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The General Assembly delegated sufficient authority to the Board to promulgate uniform, comprehensive, and mandatory regulations in the field of building and construction standards. The Board has reasonably interpreted that authority as precluding local adoption of construction standards either greater than or less than those set out in the State Building Code. To the extent the Board's exercise of that authority

conflicts with local enactment of ordinances regulating the same subject, the provisions of the State Building Code implicitly preempt any other local requirements.

We note that the Board has not consistently exercised its authority to preclude such local initiatives. As noted above, the Mini/Maxi Code Statement was not included in the Building Code until 1997. It is arguable that the statement was unnecessary until that time given the express language of KRS 198B.060. However, this position is somewhat undermined by the omission of the Mini/Maxi Code Statement from the 2007 versions of the prefaces to the Building and Residential Codes. Nevertheless, even in the absence of an express Mini/Maxi Code Statement, we conclude that the Board clearly has the authority and the discretion to adopt this interpretation of the Building Code. Based on this interpretation, we find the sprinkler requirement of the Indian Hills Ordinance conflicts with the Board's interpretation of the Building and Residential Codes. Consequently, the Board properly issued the do not enforce letter to the City of Indian Hills. Any other issue is beyond the scope of this opinion or the scope of relief which may be granted to the parties before the Court.

Accordingly, the judgment of the Franklin Circuit Court is affirmed in result with respect to the sprinkler requirements of the Indian Hills Ordinance. The order of the Franklin Circuit Court dismissing the declaratory claims relating to the fifteen other ordinances is also affirmed.

ALL CONCUR.