RENDERED:  NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED
**MODIFIED:  DECEMBER 13, 2024; 10:00 A.M.**

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2023-CA-0708-MR & 2023-CA-0753-MR

GEORGE HANNA; AND
NAHED HANNA                          APPELLANTS/CROSS-APPELLEES

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 11-CI-00686

PICKETT AND DUNN ROOFING
AND SHEET METAL, INC.               APPELLEES/CROSS-APPELLANTS

OPINION
AFFIRMING IN
APPEAL NO. 2023-CA-0708-MR;
REVERSING AND REMANDING IN
APPEAL NO. 2023-CA-0753-MR

** ** ** ** **

BEFORE:  ECKERLE, GOODWINE, AND McNEILL, JUDGES.

ECKERLE, JUDGE:  This dispute involves primarily claims of breach of contract

and warranty stemming from the installation of a residential roof.

Appellants/Cross-Appellees, George and Nahed Hanna (collectively, "the Hannas"), seek review of orders and a judgment of the Fayette Circuit Court following a jury verdict in favor of Appellees/Cross-Appellants, Pickett and Dunn Roofing and Sheet Metal, Inc ("Pickett & Dunn"). The Hannas appeal from the Trial Court's orders: granting Pickett & Dunn's motion to amend the complaint and denying their motion to file an amended complaint; granting partial summary judgment for Pickett & Dunn on the breach-of-contract claims; denying their motion for directed verdict; and excluding or allowing the admission of certain evidence at trial. In its cross-appeal, Pickett & Dunn argues that the Trial Court abused its discretion by denying its motion for attorneys' fees and costs as provided for by the contract.

After careful review, we find no error or abuse of discretion in the rulings addressed in the appeal. However, we conclude that the Trial Court failed to make sufficient findings justifying its decision to deny attorneys' fees in the cross-appeal. Hence, we reverse this order and remand for additional findings of fact and conclusions of law.

## I.    Facts and Procedural History

On October 6, 2008, the Hannas entered into a contract with Pickett & Dunn Roofing for installation of a roof on their house located at 4241 Bridle Ridge Lane in Lexington. The roof consisted of areas that were to be covered with

shingles and a large turret that was to be covered by metal. The parties agreed on a total price of $90,000.00, with one-third to be paid at signing, one-third to be paid on delivery of the materials, and the final third to be paid upon completion. The contract also set out several warranties for the materials and workmanship.

Between October 9, 2008, and December 12, 2008, the parties negotiated four revisions of the contract. One of the revisions specified that the material for the turret was to consist of 26-gauge, standing seam metal. The second required that shingles were to be colored stone-gate grey. The third provided that Pickett & Dunn would install 16-ounce copper standing seam valleys. And the fourth and final modification reflected the parties' agreement that Pickett & Dunn were not to perform any carpentry or woodwork on the house.

The Hannas made the first installment payment after the execution of the final contract revision, and they made the second upon delivery of the materials. Pickett & Dunn began work in January of 2009 and completed the shingle work by early February. However, the turret work did not run smoothly. Pickett & Dunn claimed that the Hannas had not selected a color for that part of the job, and it could not begin work until they did. The Hannas countered that they had requested copper roofing for the turret and demanded that Pickett & Dunn install it for the quoted price. The parties were unable to achieve agreement on the material or the cost for the turret, and Pickett & Dunn ceased work.

The Hannas then hired a different roofer to complete the work. They also opined that much of the roofing work performed by Pickett & Dunn had been done incorrectly. Consequently, on February 11, 2011, George Hanna filed a complaint against Pickett & Dunn alleging breach of contract and breach of warranty. In its answer, Pickett & Dunn also asserted counterclaims for breach of contract and fraud. Nahed Hanna was later added as a party to both the complaint and counterclaims.

This litigation has proceeded ever since, encompassing more than a decade. After extensive discovery, the parties filed cross-motions for summary judgment. In an Order entered more than ten years after the case began, on November 30, 2021, the Trial Court granted Pickett & Dunn's motion for summary judgment. The Trial Court concluded that the contract clearly specified 26-gauge standing sheet metal for the turret. The Trial Court also found, as a matter of law, that the Hannas' refusal to allow installation of the agreed-upon material constituted a breach of contract that prevented Pickett & Dunn from full performance of the contract. Thus, the Trial Court dismissed the Hannas' breach-of-contract claim and granted summary judgment in favor of Pickett & Dunn on its countervailing breach-of-contract claim. The Trial Court separately granted summary judgment for the Hannas on Pickett & Dunn's fraud claim.

Over a year later, the case went to a jury trial from March 8, 2023, to March 15, 2023. The jury found for Pickett & Dunn on the Hannas' warranty claims, specifically finding that Pickett & Dunn substantially performed its duties to install the shingled portion of the roof in a good and workmanlike manner and that Pickett & Dunn did not fail to correct any defects prior to leaving the job site. The jury also awarded Pickett & Dunn $30,000.00, representing the unpaid portion of its contract with the Hannas.

The Trial Court subsequently denied the Hannas' motion for a judgment notwithstanding the verdict. The Trial Court also denied Pickett & Dunn's motion for attorneys' fees and costs of litigation. However, the Trial Court granted Pickett & Dunn's motions for prejudgment interest. This appeal and cross-appeal followed. Additional facts will be set forth below as necessary.

## II.     Motions to Amend the Complaint

The Hannas challenge two of the Trial Court's rulings regarding amending the complaint: (1) adding Nahed Hanna as a party; and (2) declining to add a claim for constructive trust. As to the first argument, Pickett & Dunn had moved to add Nahed Hanna as a plaintiff and co-defendant to its counterclaim on November 11, 2016, claiming that she was an indispensable party because she co-owned the property. The Hannas countered that Nahed Hanna was not

indispensable and that the motion was untimely. Following a hearing, the Trial Court granted Pickett & Dunn's motion.

The decision whether to add necessary or indispensable parties rests within the sound discretion of the Trial Court. *Jones by & through Jones v. IC Bus, L.L.C.*, 626 S.W.3d 661, 669 (Ky. App. 2020) (citing *Commonwealth, Dep't of Fish & Wildlife Res. v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995)). Joinder of parties is governed by Kentucky Rule of Civil Procedure ("CR") 19.01, which provides:

> A person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

As the rule states, an indispensable party is one whose absence prevents the Court from granting complete relief among those already parties. *Jones*, *supra*, at 670 (citing *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. 1979),

-6-

*superseded by statute on other grounds by Browning v. Preece*, 392 S.W.3d 388

(Ky. 2013)). *See also West v. Goldstein*, 830 S.W.2d 379, 385 (Ky. 1992),

*Kentucky Ass'n of Fire Chiefs, Inc. v. Kentucky Bd. of Hous., Bldgs. & Const.*, 344

S.W.3d 129, 134 (Ky. App. 2010), and *Liquor Outlet, L.L.C. v. Alcoholic Beverage*

*Control Bd.*, 141 S.W.3d 378, 387 (Ky. App. 2004).

Although Nahed Hanna did not sign the contract, that document

named her as a co-owner of the property. And as an undisputed fact, Nahed Hanna

actually is a co-owner of the property. As such, she is directly affected by the

contract and the claims in this suit. She clearly has an interest in her own home,

and omitting her from the litigation could impede her interest and subject Pickett &

Dunn to future liability for the same claims. Accordingly, we agree with Trial

Court that Nahed Hanna was an indispensable party, and her presence is necessary

to grant complete relief among parties already to the action. *Rice v. Steele*, 295

S.W.3d 453, 454-55 (Ky. App. 2009). No error occurred here on that issue.

Turning to the second issue of amending the complaint, the Hannas

argue that the Trial Court erred by denying their motion to add a claim for

constructive trust. On May 10, 2021, the Hannas had moved to file an amended

complaint naming Clarence Pickett and Mark Dunn, individually, as constructive

trustees of the assets of Pickett & Dunn. The Hannas argued that the Pickett and

Dunn individuals were liable as constructive trustees, having received the assets of

the Pickett & Dunn company upon its dissolution in 2015 (seven years after the 2008 contract at issue here).

As a general rule, if a shareholder receives property from a dissolved corporation, that shareholder is liable to any unpaid creditors of the dissolved corporation to the extent of the property received. *Bear, Inc. v. Smith*, 303 S.W.3d 137, 146 (Ky. App. 2010) (citing Kentucky Revised Statutes ("KRS") 271B.14-060). However, the claims against the shareholder must be timely asserted. *Id.* at 147. Here, the Hannas were advised of the corporate dissolution in 2016, but did not attempt to file their amended complaint until 2021. Furthermore, the Trial Court's pre-trial order, entered October 8, 2018, required filing of amended pleadings on or before December 4, 2018, "with leave to file other pleadings only for good cause shown." The Hannas have not attempted to account for their years-long tardiness or to show how their amended complaint would have been timely.

In addition, the Hannas fail to show any prejudice from the denial of their motion to amend. The Trial Court entered a status quo order directing that Pickett & Dunn would not dissipate its assets and would submit to further discovery. The Hannas do not allege that the status quo order was violated. Moreover, for the reasons discussed *infra*, any issue relating to their attempted collection of a judgment is now moot.

### III.   Partial Summary Judgment

The Hannas next argue that the Trial Court erred by granting partial summary judgment on their breach of contract claims against Pickett & Dunn. "The proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The Trial Court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the Trial Court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

The Hannas assert that Pickett & Dunn was the first to breach the contract by refusing to complete the contracted roofing work. Consequently, the

Hannas contend that Pickett & Dunn should not be heard to complain based on their subsequent breach. *Mostert v. Mostert Grp., L.L.C.*, 606 S.W.3d 87, 94 (Ky. 2020) (citing *Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956)).

While the Hannas assert that Pickett & Dunn breached the agreement first, there was no factual dispute that the contract required Nahed Hanna to select a color for the turret roof. Until she did so, Pickett & Dunn could not complete the work. However, Nahed Hanna refused to select a color, taking the position that the Hannas were entitled to upgrade the roofing material to the more-expensive copper material.

Nevertheless, the Hannas maintain that the Trial Court should have allowed them to present extrinsic evidence regarding the roofing material. We disagree. "In the absence of ambiguity[,] court[s] will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* at 92 (quoting *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694-95 (Ky. 2016)).

The parties agree that the December 12, 2008, revisions represent the final, executed version of the contract. The contract clearly provided for Pickett & Dunn to use 26-gauge standing seam metal on the turret. The Hannas fail to show that the contract term was ambiguous or that they did or reasonably could have

understood it to mean copper. Indeed, the evidence was uncontested that 26-gauge standing seam metal does not include 16-ounce copper, which was required by contract only in the valleys. Furthermore, Nahed Hanna testified in her deposition that she did not understand the difference between 26-gauge standing seam metal and copper, and perhaps not turrets and valleys either. The Hannas' unilateral misunderstanding, if it was one, cannot constitute a ground to find the clear contract terms ambiguous. *See Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006).

Likewise, there was no dispute that Pickett & Dunn could not complete the roofing work until the Hannas selected a color for the turret. (They had selected a color for the shingles, and Pickett & Dunn completed that part of the work.) The Hannas refused, instead demanding a turret made of copper material not provided in the contract. Thus, there was no genuine issue of material fact that the Hannas first breached the contract. Consequently, the Trial Court properly granted summary against the Hannas and for Pickett & Dunn on the breach of contract claims. For the same reasons, we find no error in the portion of the instructions advising the jury of these rulings.

### IV. Denial of Motions for Directed Verdict/Judgment Notwithstanding the Verdict

The Hannas further argue that they were entitled to a directed verdict or a judgment notwithstanding the verdict on their warranty claims against Pickett

& Dunn.  The same standard of review applies to both motions.  *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007).  A Trial Court may direct a verdict on an issue when there is a "complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ."  *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998).  *See also* CR 50.01.  In making this determination, the Trial Court must "admit[] the truth of all evidence which is favorable to the party against whom the motion is made."  *National Collegiate Athletic Ass'n by and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988).  The Trial Court may not consider the credibility or weight of the proffered evidence, because "if there is conflicting evidence, it is the responsibility of the jury, the trier of fact, to resolve such conflicts."  *Daniels v. CDB Bell, L.L.C.*, 300 S.W.3d 204, 215 (Ky. App. 2009) (citing *Hornung*, 754 S.W.2d at 860).

The Hannas point out that their experts identified nearly $18,000.00 in deficiencies attributable to Pickett & Dunn's installation of the roof.  They also contend that Pickett & Dunn's experts did not significantly dispute this testimony. But while Pickett & Dunn's experts conceded that some of the work was incomplete, they contend the lack of finish was caused by the Hannas' breach.

Pickett & Dunn's experts testified that Pickett & Dunn substantially completed the shingle portion of the roof in a good and workmanlike manner.

They also testified that other defects identified by the Hannas were not caused by Pickett & Dunn, but by defective work by other contractors. The experts also testified that the unfinished work could not have been completed before Pickett & Dunn left the worksite. In other words, the expert testimony conflicted, and the parties hotly contested the effect of the testimony on the warranty. Under the circumstances, the Trial Court did not err by submitting the disputed warranty issues to the jury to decide these matters of fact.

## V. Evidentiary Issues

Finally, the Hannas raise several issues concerning the Trial Court's decisions to admit or exclude certain evidence. This Court reviews the Trial Court's evidentiary rulings for abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581. More specifically, a Court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004).

A. *Exclusion of Expert Witness*

In a matter related to the denial of their motion for a directed verdict, the Hannas contend that the Trial Court improperly excluded the testimony of one of their expert witnesses, Jared Stephenson. In 2021, the Hannas identified Stephenson as a fact witness to identify leaks in the roof. The Trial Court excluded his testimony due to the Hannas' failure to comply with discovery orders. In the same order, the Trial Court also denied Pickett & Dunn's motion for an additional inspection of the roof. Thereafter, in March of 2023 and shortly before the trial, the Hannas filed a "motion to reconsider" to allow Stephenson to testify as an expert witness. The Trial Court denied this motion, concluding that it was untimely.

We find no abuse of discretion here. The exclusion of a witness may be an appropriate consequence for failure to comply with pretrial orders. *Peyton v. Commonwealth*, 253 S.W.3d 504, 512 (Ky. 2008). Furthermore, a Trial Court may properly exclude expert testimony for failure to comply with the disclosure requirements of CR 26.02(4). *Clephas v. Garlock, Inc.*, 168 S.W.3d 389 (Ky. App. 2004). Under these circumstances, the Hannas make no showing that the Trial Court's exclusion of Stephenson constituted an abuse of its discretion to sanction failures to comply with timelines and discovery.

B. *Testimony about other disputes involving the Hannas and other Contractors*

Next, the Hannas argue that the Trial Court abused its discretion by allowing testimony about disputes between the Hannas and other contractors who worked on their home. Prior to trial, the Hannas filed a motion *in limine* to exclude testimony from Pickett & Dunn's witnesses on these matters. The Trial Court granted the motion but noted that such evidence may be admissible for impeachment purposes. During trial, Trial Court allowed Pickett & Dunn to question Nahed Hanna about the Hannas' lawsuits against another contractor. The Hannas allege that the Trial Court improperly allowed Pickett & Dunn to violate the pre-trial order and introduce prejudicial evidence suggesting that they were litigious in matters involving construction of the house.

Under Kentucky Rule of Evidence 404(b), evidence of other wrongs or acts is not admissible to prove the character of a person in order to show conformity therewith, but it may be admissible if offered for another purpose. In this case, the Hannas' warranty claims challenged the workmanship of Pickett & Dunn's installation of the roof, causing various leaks. On cross-examination, Pickett & Dunn asked Nahed Hanna about the Hannas' litigation against other contractors involving the same leaks. Thus, the Trial Court did not allow Pickett & Dunn to ask these questions to impugn the Hannas' character. Rather, the

questions were relevant to impeach the Hannas' allegations regarding the cause of the leaks. Therefore, we find no abuse of discretion.

### C. *Exclusion of Photographic Evidence*

Shortly before trial, Pickett & Dunn's counsel objected to the Hannas' introduction of photographs that George Hanna had taken during the construction of the house. The Trial Court excluded the photos due to the Hannas' failure to disclose them during discovery. However, during trial, George Hanna testified that he took the pictures. The Hannas' counsel moved the Trial Court to reconsider its prior ruling excluding the photos. Ultimately, the Trial Court allowed the Hannas to introduce some but not all of the photos.

The Hannas maintain that the pre-trial ruling excluding all of the photos and the trial ruling excluding some of the photos amounted to an abuse of discretion. However, the Hannas fail to identify how they were prejudiced by the exclusion of some of the photos. Indeed, the Trial Court allowed testimony about them. In the absence of a showing that their substantial rights were prejudiced, the abuse of discretion, if any, was harmless. *Renot v. Secura Supreme Ins. Co.*, 671 S.W.3d 282, 288 (Ky. 2023) (citing *Rossi v. CSX Transp., Inc.*, 357 S.W.3d 510, 515 (Ky. App. 2010)).

*D.* *Exclusion of Evidence of Pickett & Dunn's Corporate Dissolution*

In their final argument on appeal, the Hannas argue that the Trial Court improperly excluded evidence of Pickett & Dunn's corporate dissolution. As discussed above, the Trial Court declined to allow the Hannas to file an amended complaint to assert claims for a constructive trust based on these circumstances. Moreover, the Hannas fail to show how this evidence would have been relevant to any of the issues remaining for trial or that they were prejudiced by its exclusion. Therefore, we find no abuse of discretion.

## VI. Cross-Appeal

In its sole argument on cross-appeal, Pickett & Dunn argues that the Trial Court erred when it failed to award attorneys' fees and costs. The final version of the contract executed in 2008 included a separate page that set forth the payment schedule, as well as the following provision:

> BY SIGNING THIS FORM YOU ALSO AGREE THAT
> IF PAYMENT IS NOT RECEIVED AS AGREED
> UPON, WE HAVE THE RIGHT TO USE ANY
> MEANS TO COLLECT PAYMENT. ANY EXPENSES
> INCURRED ATTORNEY FEES, COURT COSTS,
> ETC. WILL BE THE RESPONSIBILITY OF THE
> HOMEOWNER AND/OR PERSON(S) SIGNING
> ABOVE.

In its initial judgment following the jury verdict, the Trial Court found that the contract provision for attorneys' fees was clear and unambiguous. The Trial Court further found that the Hannas breached the contract, and that they

clearly owed the $30,000.00 unpaid balance. The Trial Court further noted that KRS 411.195 authorizes the enforcement of contractual provisions for the collection of attorneys' fees, although the award of any amount of attorneys' fees is within the Trial Court's discretion. The Trial Court concluded that "[t]he amount of contractual attorney fees is reserved for decision."

At the May 5, 2023, hearing, the Hannas extensively argued that the fee provision was unenforceable because it was not properly incorporated by reference into the contract. *See Dixon v. Daymar Colleges Grp., L.L.C.*, 483 S.W.3d 332, 344 (Ky. 2015).[1] They also argued that Pickett & Dunn failed to comply with KRS 411.195 by establishing that it actually paid the fees to outside counsel. In addition, the Hannas asserted that the fee provision was not triggered due to Pickett & Dunn's failure to complete the roofing work, and that the fees sought by Pickett & Dunn were unreasonable insofar as they included amounts expended for claims unrelated to the contract collection. The Trial Court's May 23, 2023, Order summarily denied Pickett & Dunn's motion for attorneys' fees without setting forth any reasons.[2]

---

[1] In response, Pickett & Dunn argued that, even if the attorneys' fee provision was not incorporated into the contract, the Hannas should be estopped from denying it because their breach of contract claims involved the same unsigned form.

[2] The Trial Court's May 23, 2023, Order incorporated many previous rulings made on the record. However, the Trial Court did not rule on the attorneys' fee issue at any prior hearing.

We recognize that, even when there is a contractual provision authorizing an award of attorneys' fees, such an award is largely within the discretion of the Trial Court. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, L.L.C.*, 540 S.W.3d 770, 787 (Ky. 2017) (citing *Woodall v. Grange Mut. Cas. Co.*, 648 S.W.2d 871, 873 (Ky. 1983)). However, the Trial Court's failure to make any findings on this matter precludes any meaningful appellate review. We are unable to determine whether the Trial Court based its conclusion on a proper application of the law to the facts of this case. For instance, we do not know whether the Trial Court concluded that the attorneys' fee provision was not incorporated by reference or whether the amount claimed was unreasonable. Under the circumstances, we must remand the matter to the Trial Court for additional findings of fact and conclusions of law supporting its decision regarding the collection of contractually authorized attorneys' fees.

## VII. Conclusion

Accordingly, in Appeal No. 2023-CA-0708-MR, we affirm the judgment and orders of the Fayette Circuit Court. In Appeal No. 2023-CA-0753-MR, we reverse the post-judgment order of the Fayette Circuit Court denying Pickett & Dunn's motion for attorneys' fees, and we remand for additional findings of fact and conclusions of law to determine whether the contractual provision is

-19-

enforceable and, if so, the amount of reasonable attorneys' fees to which Pickett &

Dunn is entitled.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES:

J. Ross Stinetorf
Lexington, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Whitney Dunlap, III
Versailles, Kentucky

Erin C. S. Izzo
Lexington, Kentucky